UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILTON MIKE EVERETT                                    CIVIL ACTION

versus                                                 NO. 08-4745

STATE OF LOUISIANA                                     SECTION: "A" (1)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE.**

Petitioner, Wilton Mike Everett, is a state prisoner incarcerated at the J. Levy Dabadie Correctional Center, Pineville, Louisiana. On May 7, 2001, he was convicted of attempted manslaughter in violation of Louisiana law.[1] On June 18, 2002, he was found to be a second

---

[1] State Rec., Vol. V of IX, transcript of May 7, 2001, p. 187; State Rec., Vol. VII of IX, minute entry dated May 7, 2001; State Rec., Vol. VI of IX, jury verdict form.

offender,² and, on November 15, 2002, he was sentenced as such to a term of twenty years imprisonment.³ On September 24, 2003, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction and sentence.⁴ The Louisiana Supreme Court then denied petitioner's related writ application on February 20, 2004.⁵

On September 2, 2004, petitioner filed with the state district court a post-conviction application arguing that his trial counsel was ineffective in several respects.⁶ That application was denied on October 13, 2004.⁷ He then filed with the Louisiana Fourth Circuit Court of Appeal a writ application which was granted in part and denied in part on January 10, 2005. The Court of Appeal denied the application as to one of petitioner's post-conviction claims; however, the court granted the application as to his two remaining claims and ordered that the trial court hold a hearing on those claims.⁸ The trial court thereafter held an evidentiary hearing on November 16, 2006, and again

---

² State Rec., Vol. VII of IX, transcript of June 18, 2002; State Rec., Vol. VII of IX, minute entry dated June 18, 2002.

³ State Rec., Vol. VII of IX, minute entry dated November 15, 2002.

⁴ State v. Everett, No. 2003-KA-0151 (La. App. 4th Cir. Sept. 24, 2003) (unpublished); State Rec., Vol. V of IX.

⁵ State v. Everett, 866 So.2d 815 (La. 2004) (No. 2003-K-2954); State Rec., Vol. V of IX.

⁶ State Rec., Vols. II and III of IX.

⁷ State Rec., Vol. III of IX, Judgment dated October 13, 2004.

⁸ State v. Everett, No. 2004-K-2015 (La. App. 4th Cir. January 10, 2005); State Rec., Vol. I of IX.

denied petitioner's remaining claims.⁹ His related writ applications were then denied by the Louisiana Fourth Circuit Court of Appeal on May 1, 2007,¹⁰ and the Louisiana Supreme Court on March 24, 2008.¹¹

On October 20, 2008, petitioner filed the instant application for federal *habeas corpus* relief claiming that he received ineffective assistance of counsel.¹² The state does not contend that the application is untimely or that petitioner failed to exhaust his state court remedies.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

---

⁹ State Rec., Vol. VIII of IX, transcript of November 16, 2006; State Rec., Vol. IV of IX, minute entry dated November 16, 2006.

¹⁰ State v. Everett, No. 2007-K-0383 (La. App. 4th Cir. May 1, 2007) (unpublished); State Rec., Vol. VIII of IX.

¹¹ State v. Everette [sic], 977 So.2d 945 (La. 2008) (No. 2007-KP-1096); State Rec., Vol. IX of IX.

¹² Rec. Roc. 3.

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> Lumas Garrett,[FN1] a state commissioned police officer employed by Tulane University, testified that on 6 July 2000, as he patrolled the university campus, he observed Everett riding a bike with another bike in tow. Officer Garrett stopped Everett and asked

for registration or a receipt of purchase for the bike in tow. When Everett failed to produce the paperwork Officer Garrett took Everett into custody to further investigate the situation. Officer Garrett requested backup to conduct the investigation, and Officers Michael Jordy[FN2] and Gay Mladenoff responded. Officers Jordy and Mladenoff escorted Everett to the campus Public Safety Office on foot while Officer Garrett investigated. Once in the Public Safety Office Everett agreed to give a written statement. Everett stated that he found the bike he was towing abandoned on Willow Street near a Goodwill collection box. Everett was placed in a holding cell. Officer Garrett checked the university's registrations and found that the bike Everett was riding belonged to a Tulane student. Everett was informed that the bike was stolen, and that he was under arrest for the theft.

> [FN1] Officer Garrett's name is also spelled in the record as "Garret."
>
> [FN2] At the time, Officer Jordy was a trainee.

As Officers Jordy and Garrett photographed the two bikes outside of the Public Safety Office, the officers observed Everett exit the building. When the officers ordered Evertt to stop, he ran. The officers gave chase on foot. During the foot chase Officer Jordy fell to the ground, but Officer Garrett continued the pursuit. Officer Garrett followed Everett into a courtyard area behind one of the university buildings. Officer Garrett, with his gun drawn, ordered Everett to get on the ground several times and each time Everett refused. Officer Garrett testified that he holstered his gun and used baton and pepper spray in an attempt to apprehend Everett. Officer Garrett testified that Everett ran towards him, and as they struggled he felt his gun being taken out of his holster. The weapon then discharged, hitting the officer in the leg.[13]

---

[13] State v. Everett, No. 2003-KA-0151, at pp. 1-2 (La. App. 4th Cir. Sept. 24, 2003) (unpublished); State Rec., Vol. V of IX.

Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of counsel at trial. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. See id. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a

determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Strickland, 466 U.S. at 697.

An ineffective assistance of counsel claim involves a mixed question of law and fact. Accordingly, this Court must defer to a state court decision rejecting such a claim unless petitioner establishes that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). For the following reasons, the Court finds that petitioner has not made that showing with respect to the state court decisions rejecting his claims.

First, it is contended that defense counsel was ineffective for failing to adequately communicate with petitioner. To the extent that petitioner is contending that counsel failed to meet the professional rules of conduct concerning communication between an attorney and his client, that alone would not warrant relief under the Sixth Amendment. Rather, such relief is warranted only if petitioner can also "show that but for his counsel's alleged unprofessional errors, there is a

reasonable probability the result of the proceeding would have been different." United States v. Hunter, No. 08-10487, 2009 WL 689677, at *1 (5th Cir. Mar. 17, 2009). Where, as here, petitioner has not shown that any demonstrable benefit would have accrued to the defense from better communication, he has not proven that any prejudice resulted from the lack of communication, and his claim necessarily fails. Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *8 (E.D. La. Dec. 11, 2008).[14]

Second, petitioner claims that his counsel was ineffective in failing to adequately investigate the case. For the following reasons, the Court also rejects that claim.

As an initial matter, this Court rejects the contention that counsel's investigation was deficient. In addition to meeting during court appearances, counsel met with petitioner in jail on at least three occasions prior to trial.[15] Moreover, at the evidentiary hearing, petitioner made the following concessions:

> Q. Did you all discuss the facts of your case?

---

[14] That said, the Court does not mean to suggest that counsel's communication with petitioner was inadequate. Counsel met with petitioner on several occasions, both during court appearances and at jail. Counsel provided petitioner with the documents and information he requested, albeit perhaps not as quickly as he would have liked. There is no indication that counsel neglected to provide petitioner with any important information regarding his case. Rather, petitioner appears simply to take umbrage that counsel was not as responsive as petitioner would have liked. However, petitioner's expectations were clearly excessive. For example, counsel testified that he had never had a client who had written him more than three letters; however, petitioner wrote counsel *twenty-seven* letters with various requests and demands. State Rec., Vol. VIII of IX, transcript of November 16, 2006, p. 12. The level of service petitioner seems to have expected would have been daunting for a privately-retained attorney to achieve; however, it would be nigh impossible for a busy public defender to please such a client.

[15] State Rec., Vol. VIII of IX, transcript of November 16, 2006, pp. 15, 34, and 44-45.

> A. Yes.
>
> Q. Did you tell him what you believe your defenses – did you discuss defenses to the allegations?
>
> A. Yes.
>
> Q. Did you inform him of any witnesses that you would like called?
>
> A. Well there wasn't any witness I could call.
>
> Q. Okay. Did you discuss whether or not you felt you should testify?
>
> A. The first time I don't know if we discussed if I should testify or not, but we did discuss that.
>
> Q. And did he give you every opportunity to talk about your facts in your case and strategy?
>
> A. The two times he came to OPP and stayed for an hour, yes.
>
> Q. I'm speaking of the December 1st.
>
> A. December 1st?
>
> Q. Yes.
>
> A. Yes.
>
> Q. And when he came to see you did he seem knowledgeable about the facts of your case?
>
> A. Did he seem knowledgeable?
>
> Q. Yes.
>
> A. Yes.[16]

---

[16] State Rec., Vol. VIII of IX, transcript of November 16, 2006, pp. 86-87.

In addition, defense counsel throughly reviewed the police report,[17] twice visited the scene of the incident,[18] interviewed the Tulane University officers who were present when petitioner was arrested,[19] and investigated the advisability of retaining a firearms expert to testify.[20] In light of the simple nature of this case, where the disputed issue was how the shot came to be fired during the struggle between petitioner and the victim, counsel's investigation was more than adequate and certainly exceeded that which this court is accustomed to seeing in similar cases.

    Moreover, in any event, a petitioner asserting a claim for inadequate investigation bears the burden to provide factual support as to what further investigation would have revealed. See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). In the instant case, petitioner has brought forth *no* evidence to show that further investigation would have revealed any information whatsoever that would have been beneficial to the defense. Without such evidence, he cannot make the required showing that he was prejudiced by the allegedly inadequate investigation.

    Third, petitioner contends that his counsel was ineffective in failing to hire a firearm expert. The defense was granted funds to retain such an expert; however, after investigating the

---

[17] State Rec., Vol. VIII of IX, transcript of November 16, 2006, p. 9.

[18] State Rec., Vol. VIII of IX, transcript of November 16, 2006, pp. 15-16.

[19] State Rec., Vol. VIII of IX, transcript of November 16, 2006, p. 16.

[20] State Rec., Vol. VIII of IX, transcript of November 16, 2006, pp. 18-21.

potential usefulness of such testimony, defense counsel elected not to hire or call such an expert at trial. This claim fails for at least two reasons.

In the first place, "the presentation of testimonial evidence is a matter of trial strategy ...." Day v. Quarterman, No. 07-40699, 2009 WL 1110589, at *10 (5th Cir. Apr. 27, 2009); see also Green v. Cockrell, No. 02-20650, 2003 WL 21145722, at *2 (5th Cir. Apr. 29, 2003) ("A strategic or tactical decision not to call particular witnesses does not constitute ineffective assistance."); Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984) (there is a strong presumption that a decision regarding whether to call a witness is such a matter of trial strategy); Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978) ("[P]resentation of testimonial evidence is a matter of trial strategy ...."). At the post-conviction evidentiary hearing, defense counsel explained that he investigated the possibility of calling a firearms expert, but he made a tactical decision not to do so:

> Q. ... Did you, in fact, hire a firearms expert with that money that was granted to you?
>
> A. No. What I did was I had used a firearms expert in another case a few years ago. I couldn't remember the guy's name and so I couldn't locate him so I talked to a lawyer friend who does civil work to see if he could give me the name of a firearms expert, so – and he was also someone who was familiar with guns. I am not familiar with guns. I have a basic knowledge just from being in the system, but I don't know a lot about guns. So I talked to the lawyer friend about my situation with the ballistics expert, what I was looking for, and he told me what his opinion would be, but I told him I wanted to speak to an expert. So he called another lawyer friend who gave him the name of an expert that he gave to me. He also talked to his other lawyer friend, I don't know who that was, about the situation who agreed with the first lawyer that the ballistics expert wasn't going to be able to confirm what we wanted him to confirm, basically. But

anyway he gave me the name of an Art Turner at A-1 Gun Repair or something and I spoke with him.

Q. And he is a firearms – can he determine whether or not a shells been jammed in the slot of a gun?

A. Well it was told to me that by my lawyer friend who talked to the second lawyer that he had been qualified as an expert before. So I just went out there and talked to the guy. I didn't call him on the phone or anything. I just went out to his shop and talked to him.

Q. Did you determine personally if he was qualified as an expert?

A. No, I didn't. I asked him if he was familiar with the workings of a Smith & Wesson forty caliber. I don't remember what else this was, short barrel long barrel, I don't know. But I remember it was a Smith & Wesson forty caliber, semiautomatic pistol and I asked him if he was familiar with that gun and he said that he was. And so I just gave him my scenario, basically. I don't know if I even introduced myself. I told him I was a lawyer working on a case. I had money to hire an expert if the testimony would help me and we discussed it. It might have been a two minute conversation and he told me the same thing that the first two lawyers that I had talked to about this said, which was basically that the scenario that Mr. Everett said occurred was one of the possible scenarios. But there was no way to exclude the scenario that Officer Garrett, Lumas Garrett said had occurred. So I did not use him. I did not hire him. I didn't call him as a witness. And I discussed this with Mr. Everett at length why I wasn't using a ballistics expert.

Q. Okay. So, Mr. Green, so what are you saying is that it's possible that a ballistics expert could have gotten on the stand and validated what Mr. Everett's version of the story was?

A. I wouldn't agree with the way you put that. It's possible I could have called a ballistics expert. I had five hundred dollars from the court to pay for it. If he would have helped me I would have put him on the witness stand. The reason I

>     didn't call the witness was that his testimony wouldn't help
>     me. It doesn't do me any good to put a witness on the stand
>     who says, "Oh yeah, well this is the – yeah, whatever it says,
>     that's entirely possible what happened." And the D.A. goes,
>     "Well wait. What about what we say?" And he goes, "Well
>     yeah, it's entirely possible that's what happened." That
>     doesn't do me any good.
>
> Q.  Okay.
>
> A.  That doesn't do my client any good.
>
> Q.  So you think the two would have cancelled each other out?
>
> A.  Well I think it would have made us look stupid for putting on
>     a witness who doesn't advance the case any.[21]

The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters of trial tactics through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689. Accordingly, the United States Fifth Circuit Court of Appeals has noted:

> Strategic choices made after thorough investigation of law and facts
> relevant to plausible options are *virtually unchallengeable*.
> Moreover, a conscious and informed decision on trial tactics and
> strategy cannot be the basis of constitutionally ineffective assistance
> of counsel unless it is so ill chosen that it *permeates the entire trial
> with obvious unfairness.*

St. Aubin v. Quarterman, 470 F.3d 1096, 1102 (5th Cir. 2006) (internal quotation marks, brackets, and citations omitted) (emphasis added). That high threshold clearly has not been met in this case.

---

[21] State Rec., Vol. VIII of IX, transcript of November 16, 2006, pp. 18-21.

Moreover, in any event, petitioner's claim fails for another reason as well. The Fifth Circuit has explained:

> [U]nsupported claims regarding [an] uncalled expert witness are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel.

Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002). Therefore, the Fifth Circuit recently held:

> [T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.

Day v. Quarterman, No. 07-40699, 2009 WL 1110589, at *10 (5th Cir. Apr. 27, 2009); see also Evans, 285 F.3d at 377. In the instant case, petitioner has not shown that there is a firearm expert who would have testified in a manner *favorable* beneficial to the defense. Further, it is evident that the proposed testimony here, i.e. testimony which would have supported the possibility of the discharge happening *either* the way petitioner related *or* the way the officer related, would have had no probative effect whatsoever. Accordingly, petitioner has failed to establish either that counsel's performance was deficient or that prejudice resulted from the failure to call such an expert witness.

Fourth, petitioner contends that his counsel had a conflict of interest. When that contention was first asserted on direct appeal, it was rejected by the Louisiana Fourth Circuit Court of Appeal, which held:

> Everett ... alleges that trial counsel, Kendal Green, was ineffective for representing him because he had filed a malpractice lawsuit against Mr. Green. At a hearing held on 21 March 2001, the trial court addressed Everett's lawsuit on the record. The following exchange occurred.

> Mr. Green: Judge, just to make the record clear, I was contacted by the Civil District Court's Clerk's Office yesterday to say that Mr. Everett had filed a lawsuit against me and the OIDP. So I asked him about it this morning, and he will tell you what happened.
>
> Court: Mr. Everett?
>
> Defendant: Yes. I had filed it before we had the motion hearing. I think it was about two weeks ago. And I had filed so many motions I accidentally put in the wrong paper. I was trying to go to civil court with another lawsuit, and after I realized what I had done I wrote the court and asked the clerk to withdraw it.
>
> Court: So it's not an active lawsuit?
>
> Defendant: No. No. And I still want Mr. Green to represent me.
>
> Court: You still want Mr. Green to represent you?
>
> Defendant: Yes.
>
> Everett refers to a lawsuit filed after the above-cited hearing and a few days before trial. It is not clear that the trial court had actual notice of the second lawsuit, but Everett indicated again at a hearing held on 7 May 2001, just prior to the start of his trial, that he was ready for trial with Mr. Green as his counsel. Subsequent to the 7 May 2001 hearing, Everett filed a pro se motion for new trial on this same issue and cited his second malpractice lawsuit. The trial court addressed the issue of Mr. Green's representation and the second lawsuit at a 22 June 2001 [post-trial] hearing and Mr. Green was promptly removed as counsel of record. Everett has failed to show or demonstrate how he was prejudiced by trial counsel's representation. This assignment of error is without merit.[22]

---

[22] State v. Everett, No. 2003-KA-0151, at pp. 6-7; State Rec., Vol. V of IX. The Louisiana Supreme Court denied petitioner's related writ application without assigning reasons. State v. Everett, 866 So.2d 815 (La. 2004) (No. 2003-K-2954); State Rec., Vol. V of IX. Petitioner again

- 15 -

A criminal defendant is not entitled to a new lawyer simply because he has sued his current one. See, e.g., Kouba v. United States, No. 94-2220, 1995 WL 51090 (8th Cir. Feb. 10, 1995) ("Although [defendant] sued his attorney and reported him to the state bar prior to trial, the circumstances here do not indicate a conflict of interest precluding effective assistance of counsel."); Carter v. Armontrout, 929 F.2d 1294, 1300 (8th Cir. 1991) ("We recognize that a pending lawsuit between a defendant and his attorney may give rise to a conflict of interest requiring appointment of new counsel. However, a defendant who files a lawsuit against his attorney does not necessarily create such a conflict.") (citation omitted); but see Hays v. Farwell, 482 F.Supp.2d 1180, 1198 (D. Nev. 2007). Such a *per se* rule is not required by the Sixth Amendment. Moreover, such a rule would be undesirable and unworkable, because it would in effect give a defendant the ability to veto the trial court's appointment of counsel. Where an actual conflict exists, then new counsel should of course be appointed; however, a defendant is not entitled to game the system by manufacturing a false conflict because he does not like his lawyer.

In the instant case, the state courts concluded, and this Court agrees, that there was no actual conflict. As defense counsel opined at the state post-conviction hearing, it appears that petitioner was simply trying to hedge his bets:

> Q. Everett filed a civil lawsuit against you before his trial; is that correct?
>
> A. That would be wrong. He filed two civil lawsuits against me before the trial.

---

raised the claim in the post-conviction proceedings; however, the claim was denied in those proceedings on the ground that it "was fully addressed on direct appeal and found to be without merit. La.C.Cr.P. Art. 930.4(A)." State Rec., Vol. III of IX, Judgment dated October 13, 2004.

Q. Okay.

A. One was in March of 2000, and the other one I was notified the day before his trial, May 6th, in the afternoon by a telephone call, if I remember this correctly, from the clerk of court. Because I know people who work in clerk of courts office at civil district court and they called me and said this guy is suing you and he's going to trial tomorrow. And I said, "Well, okay. I guess I'm off the case." The same thing I said the first time he sued me. I guess I'm off the case because we all know that if you sue your lawyer then you get a new lawyer. And that's what I don't understand about this whole thing. He had the chance to get a new lawyer. He had two chances to get a new lawyer. He sued me and then went into the court and said, "No, I want Green to represent me." And so the judge said, "Fine, lets go ahead." And then the day before the trial, you know, morning of, day before, whatever it was, again, he sued me again. He comes and tells the judge it was an accident that he filed it accidentally which was just incredibly ridiculous. So, again, he could have had another lawyer. If he felt like I wasn't the guy to represent him, that I hadn't done everything he wanted me to do, he could have had another lawyer. So I don't understand why he did this unless the reason he did it was what's happening today, you know, two shots at it. You know, I'll say Green was a terrible lawyer, but I'll let him represent me if we win great. If we lose, well hell I've already filed two lawsuits against him. I've got a basis to argue he's a terrible lawyer. I don't know why else he would have withdrawn those lawsuits.

Q. So you don't know why he withdraw the lawsuits?

A. All I know is when he said he filed one accidentally that was a lie. I know that. He didn't file it accidentally because it, number one, got mailed to the clerk of civil district court and, number two, he sent a declaration to the clerk of criminal

> district court saying I filed a lawsuit against my lawyer. So he didn't do it accidentally.[23]

Defense counsel later reiterated that it was evident that petitioner did not in fact want to change counsel:

> Q. On the morning of trial did Mr. Everett ask for a new lawyer again?
>
> A. No, because if he had he would have gotten one then because there was a lawsuit at that time and all he had to say is I'm suing my lawyer. I want a new lawyer. He would have gotten one.[24]

Moreover, at the post-conviction hearing, defense counsel indicated that the quality of the representation was unaffected by petitioner's antics:

> Q. Speaking of holding things against someone, by the time this came to trial you had in fact been asked to be removed as counsel twice. Were you holding that against Mr. Everett when you were standing before the jury representing him?
>
> A. Of course not, no. And it was more than twice. It was way more than twice because I'd been sued twice and he had made other motions with the court to get another lawyer. But, like I said, by the time we went to trial we were on the same page. We were working together. I was shocked to come in, you know, on May 6th or whatever and find out he was suing me again. I really was. But he wanted to go forward. I said fine.

---

[23] State Rec., Vol. VIII of IX, transcript of November 16, 2006, pp. 26-28. The Court is aware that petitioner disputes counsel's testimony. Petitioner contends that the events surrounding the "accidental" lawsuit actually occurred in March with respect to his first lawsuit, not in May with respect to his second lawsuit. Even if petitioner is correct on that point, it changes nothing. There is no evidence that petitioner voiced any objection to being represented by Green in May, and it does not change counsel's ultimate conclusion that, by filing his lawsuits, petitioner was simply trying to lay a foundation for a post-conviction challenge if a guilty verdict resulted.

[24] State Rec., Vol. VIII of IX, transcript of November 16, 2006, p. 43.

> I mean I don't hold that against him. And let me tell you something, I don't care if Wilton Everett was the guiltiest person in the world, when I try a case I want to win. It doesn't matter who the client is or what they did. That's completely irrelevant to me. I want to win. So it wouldn't have mattered if I had a grudge with him or didn't have a grudge with him. I wanted to win.[25]

In light of the foregoing, it is evident that, at the time of trial, no actual conflict existed and petitioner wanted Green to represent him. The Court further expressly rejects the contention that the quality or effectiveness of petitioner's representation was in any way adversely affected by his prior attempts to manufacture a conflict by filing lawsuits against his attorney.[26]

In summary, petitioner has not demonstrated that the state court decisions rejecting any of his ineffective assistance of counsel claims were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects those claims.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Wilton Mike Everett be **DISMISSED WITH PREJUDICE**.

---

[25] State Rec., Vol. VIII of IX, transcript of November 16, 2006, pp. 36-37.

[26] Indeed, the Court expressly finds that Mr. Green was diligent and competent in his representation of petitioner during all phases of the state district court proceeding. Further, it is unfortunate that Mr. Green was compelled to take time from his very busy schedule to appear at the lengthy post-conviction hearing conducted in the trial court.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this sixth day of May, 2009.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**